UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA PATRICO, On Behalf of The Nestlé 401(k) Savings Plan and All Other Similarly Situated Individual Account Plans,<br><br>      Plaintiff,<br><br>  v.<br><br>VOYA FINANCIAL, INC., VOYA INSTITUTIONAL PLAN SERVICES, LLC; VOYA INVESTMENT MANAGEMENT, LLC; and VOYA RETIREMENT ADVISORS, LLC,<br><br>      Defendants. | Civil Action No. 1:16-cv-07070-LGS-JLC<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

James F. Jorden, admitted *pro hac vice*
Waldemar J. Pflepsen, Jr., admitted *pro hac vice*
W. Glenn Merten, admitted *pro hac vice*
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
Phone: (202) 965-8100

Robert W. DiUbaldo
CARLTON FIELDS JORDEN BURT, P.A.
405 Lexington Avenue, 36th Floor
New York, NY 10174-0002
Phone: (212) 785-2577

Dated:  November 11, 2016     *Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ....................................................................................3

    I.    The Nestlé 401(k) Plan and the
           Investment Advisory Services Agreement.........................................3

    II.   Plaintiff's Allegations .................................................................6

LEGAL STANDARDS ...........................................................................7

ARGUMENT .......................................................................................8

    I.    Plaintiff's Claims do not Satisfy the Threshold Plausibility Standard...................8

        A.   Plaintiff Fails to Assert Any Plausible Basis for Claims Against
             Voya Financial, VIPS, or VIM.. ..............................................8

        B.   Plaintiff's Assertion that VRA Did Not Provide "Any Material
             Services" in Connection with the Advice Program is Unfounded
             and Implausible. ................................................................11

    II.   VRA Is Not a Fiduciary With Respect to the Challenged Conduct......................13

    III.  Plaintiff Fails to Allege a Prohibited Transaction...................................17

        A.   The Threshold Predicate for an ERISA § 406(a) Claim is
             Lacking. .........................................................................17

        B.   Plaintiff Fails to Allege the Total Compensation is Unreasonable...........17

        C.   The Relief Plaintiff Requests is Unavailable ...............................19

CONCLUSION....................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Advanced Capital Commercial Group, Inc. v. Suarez*,
    2013 WL 5329254 (E.D.N.Y. Sept. 20, 2013) ...................................................10

*Allen v. Bank of Am. Corp.*,
    2016 WL 4446373 (S.D.N.Y. Aug. 23, 2016) .......................................15, 16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................ *passim*

*Atuahene v. City of Hartford*,
    10 Fed. App'x 33 (2d Cir. 2001) ..............................................................9

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
    756 F. Supp. 2d 330 (S.D.N.Y. 2010) .....................................................4

*Beddall v. State St. Bank and Trust Co.*,
    137 F.3d 12 (1st Cir. 1998) .................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................7, 11

*Coulter v. Morgan Stanley Co., Inc.*,
    753 F.3d 361 (2d Cir. 2014) ...............................................................13

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010) .................................................................3

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) .................................................................8

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005) ........................................................................8

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011) ................................................................16

*F.H. Krear & Co. v. Nineteen Named Trustees*,
    810 F.2d 1250 (1987) ................................................................2, 13, 15

*Hecker v. Deere & Co.,*
   556 F.3d 575 (7th Cir. 2009), *supplemented by* 569 F.3d 708 (7th Cir. 2009) ................... 14

*Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan,*
   95 F. Supp. 3d 402 (S.D.N.Y. 2015) ................................................................................ 4

*Lehman v. Garfinkle,*
   2009 WL 2973207 (S.D.N.Y. Sept. 16, 2009) ................................................................ 10

*Leimkuehler v. Am. United Life Ins. Co.,*
   713 F.3d 905 (7th Cir. 2013) ......................................................................................... 14

*Lockheed Corp. v. Spink,*
   517 U.S. 882 (1996) ..................................................................................................... 17

*Matusovsky v. Merrill Lynch,*
   186 F. Supp. 2d 397 (S.D.N.Y. 2002) ............................................................................ 11

*McCaffree Fin. Corp. v. Principal Life Ins. Co.,*
   811 F.3d 998 (8th Cir. 2016) ......................................................................................... 14

*Medina v. Bauer,*
   2014 WL 136636 (S.D.N.Y. Jan. 27, 2004) ................................................................... 9

*Moreno v. Deutsche Bank Ams. Holding Corp.,*
   2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ................................................................ 19

*Pegram v. Herdrich,*
   530 U.S. 211 (2000) ..................................................................................................... 13

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.,*
   712 F.3d 705 (2d Cir. 2013) ................................................................................ 8, 13, 15

*Santomenno v. John Hancock Life Ins. Co. (USA),*
   768 F.3d 284 (3d Cir. 2014) ..................................................................................... 13, 14

*Seaway Food Town, Inc. v. Med. Mut. of Ohio,*
   347 F.3d 610 (6th Cir. 2003) ......................................................................................... 14

*Sgaliordich v. Lloyd's Asset Mgmt.,*
   2012 WL 4327283 (S.D.N.Y. Sept. 20, 2012) ............................................................... 11

*Sirna v. Prudential Secs., Inc.*,
   964 F. Supp. 147 (S.D.N.Y. 1997) ..................................................................16

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .........................................................................................10

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
   39 F. Supp. 3d 461 (S.D.N.Y. 2014) ...............................................................14

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
   2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ...................................................19

*In re Van der Moolen Holding N.V. Sec. Litig.*,
   405 F. Supp. 2d 388 (S.D.N.Y. 2005) ...............................................................8

**Statutes and Regulations**

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A)) ....................................................13

29 U.S.C. § 1106(a) (ERISA § 406(a)) .........................................................7, 17

29 U.S.C. § 1106(a) (ERISA § 406(a)(1)) ...........................................................17

29 U.S.C. § 1106(1)(1)(C) (ERISA § 406(a)(1)(C)).........................................7, 17

29 U.S.C. § 1106(b)(1) (ERISA § 406(b)(1)) .......................................................6

29 U.S.C. § 1106(b)(3) (ERISA § 406(b)(3)) .......................................................6

29 U.S.C. § 1108(b)(2) (ERISA § 408(b)(2)) ...........................................7, 17, 19

29 U.S.C. § 1109(a) (ERISA § 409(a)) ...............................................................15

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) .......................................................19

29 C.F.R § 2550.404a-5 ........................................................................................4

**Rules**

Fed. R. Civ. P. 8 ...................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)............................................................................1, 8

**Other Authority**

U.S. Dep't of Labor, Advisory Op. No. 93–14A (May 5, 1993)................................................16

*Preamble*, 81 Fed. Reg. 21,055 (April 8, 2016) ........................................................18

Defendants Voya Financial, Inc., Voya Institutional Plan Services, LLC, Voya Investment Management, LLC, and Voya Retirement Advisors, LLC submit this Memorandum in Support of their Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 8 and 12(b)(6). The Complaint fails to state a claim as a matter of law under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*

## PRELIMINARY STATEMENT

Plaintiff, a participant in the Nestlé 401(k) Savings Plan (the "Nestlé Plan" or the "Plan"), challenges an Investment Advisory Services Agreement (the "Agreement") entered into between Nestlé USA, Inc. ("Nestlé"), as a fiduciary of the Nestlé Plan, and Voya Retirement Advisors, LLC ("VRA"),[1] pursuant to which investment advisory services are offered to Plan participants for specified fees.   Under the Agreement, one of the advisory options employs computer modeling by Financial Engines Advisors, LLC ("Financial Engines") as a sub-advisor.   Rather than examining the investment advice program as a whole, Plaintiff seeks to deconstruct it in an effort to manufacture purported breaches of fiduciary duty and prohibited transactions under ERISA.   This novel approach is without legal or factual support, and the Complaint should be dismissed.

Plaintiff's principal allegation – that Voya does not provide any material services under the Agreement – is sheer conjecture and flatly contradicted by materials upon which Plaintiff relies.   Both the Agreement and a brochure referenced as Exhibit A to the Complaint detail the extensive services provided by VRA in connection with the investment advice program, as well as VRA's overall responsibility for providing the offered advisory services.   The Complaint does

---

[1] Voya Retirement Advisors, LLC, formerly was known as ING Investment Advisors, LLC. Defendants adopt the defined terms used by Plaintiff in her Complaint, unless a different usage is noted.

not provide any, let alone sufficient, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nor is there any legal basis for Plaintiff's ERISA claims. Count I, alleging breach of fiduciary duty, fails for the simple reason that no Voya defendant acted as a fiduciary with respect to the conduct about which Plaintiff complains. The Second Circuit, and numerous other courts, have long held that service providers to ERISA plans are not fiduciaries when negotiating their own compensation. *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (1987). The decision to offer an investment advice program at all, and to retain VRA to implement it (with the assistance of Financial Engines), lies with Nestlé, not Voya.

Count II, meanwhile, fails because Plaintiff has not plausibly alleged an essential predicate – that a fiduciary caused a prohibited transaction. Moreover, Plaintiff fails to allege that the total compensation paid in connection with the investment advice program is unreasonable, and her focus on the compensation VRA may pay its subcontractors, sub-advisors (such as Financial Engines) or, for that matter, its employees in providing that program is insufficient to state a claim.

Finally, as to both counts, defendants Voya Financial, Inc. ("Voya Financial"), Voya Institutional Plan Services, LLC ("VIPS"), and Voya Investment Management, LLC ("VIM") have no relevant relationship to each other or the Plan in connection with which claims for relief have been stated.

Accordingly, the Complaint must be dismissed in its entirety.

## BACKGROUND

**I.     The Nestlé 401(k) Plan and the Investment Advisory Services Agreement.**

Plaintiff is a participant in the Nestlé Plan, Compl. ¶ 25, sponsored by Nestlé, the Plan fiduciary.  *Id.* ¶ 27.  Nestlé and VRA entered into the Agreement appointing VRA to provide investment advisory services to Plan participants and beneficiaries.[2]  The Agreement provides that VRA will use Financial Engines in connection with providing certain investment advisory services.  Agreement § 1.  The Complaint is predicated on Plaintiff's alleged dissatisfaction with the Agreement, and the fees charged by VRA under the Agreement.

Although named as defendants, Voya Financial, VIPS and VIM are not parties to the Agreement, and neither provide investment advisory services to Nestlé Plan participants nor receive fees in connection with any such investment advisory services.

VRA provides Nestlé Plan participants with two investment advice programs for retirement planning.  *See* Nestlé Smart$avings Program: Coming July 2012: New investment fund options and an expanded investment advice service ("Smart$avings Rollout Brochure"), attached to the Merten Decl. as Exhibit 2, at 6 and 9;[3] *see also* Agreement Exhibit A (Description of Services).  The Online Advice program (sometimes referred to as "Personal

---

[2] The Agreement is attached as Exhibit 1 to the Declaration of W. Glenn Merten in Support of Defendants' Motion to Dismiss the Complaint ("Merten Decl.").  The Court may properly consider the Agreement when assessing the sufficiency of the Complaint, which "relies heavily on [the Agreement's] terms and effect."  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."); *see also Beddall v. State St. Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (holding that when a complaint's factual allegations are expressly linked to and dependent on a document, "that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

[3] The Smart$avings Rollout Brochure was specifically identified in the Complaint as "Exhibit A attached hereto," although it was not filed with the Complaint.  Documents referenced (and quoted) in the Complaint can properly be considered on a motion to dismiss.  *DiFolco*, 622 F.3d at 111.

Online Advisor") is designed for a participant seeking advice to help her "do the work [her]self" in a "self-service, convenient environment."   Smart$avings Rollout Brochure at 6, 9.   Plan participants use a web-based tool to enter information, set retirement goals and receive instructions on how to implement the participant's savings and investment strategy.   *Id.* at 9. The Online Advice program "is based on a point-in-time analysis and is not an ongoing management service" – it "does not include continued monitoring of the investment advice provided for the participants [sic] account."   *See* Voya Retirement Advisors, LLC, Form ADV, at 5 (updated March 4, 2016) ("VRA 3/4/16 Form ADV"), Merten Decl. Ex. 3.[4]

VRA also provides an optional "managed account service called Professional Account Manager ("PAM")."   Smart$avings Rollout Brochure at 6, 9; *see also* Agreement, Exhibit A. The PAM program "is designed for the investor who prefers that investment professionals actively manage his or her Savings Plan Account."   Smart$avings Rollout Brochure at 9.   When enrolling in PAM, a participant is interviewed by a VRA advisor in order to collect information regarding the participant's financial situation, outside investments, goals, and risk tolerance. VRA 3/4/16 Form ADV at 5-6.[5]   In the PAM program, a participant's "[VRA] Investment Advisor Representative works with you to review your retirement savings and investments, walk you through a personal assessment, and suggest changes."   Smart$avings Rollout Brochure at 9. "The objective of this process is to provide an optimized asset allocation and personalized

---

[4] Courts routinely consider relevant Plan documents, public filings, and fee disclosures that were provided to a plaintiff as required by 29 C.F.R § 2550.404a-5 when resolving motions to dismiss, because they are either legally required disclosures, or are documents possessed by or known to Plaintiff and upon which Plaintiff relied in bringing this action, *see, e.g.*, Compl. ¶¶ 21 (discussing the Plan's Forms 5500); 43 (discussing fee disclosures).   *See In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d 330, 344-45 (S.D.N.Y. 2010); *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 408 (S.D.N.Y. 2015).

[5] Professional Account Management also is referred to as Professional Management.   VRA 3/4/16 Form ADV at 5.

retirement savings strategy.  The result is a personalized, inflation-adjusted retirement income forecast." VRA 3/4/16 Form ADV at 6.

Unlike the Online Advice program, after a participant enrolls in PAM, he or she authorizes VRA to provide ongoing, active management of the participant's account. Smart$avings Rollout Brochure at 9; Agreement, Exhibit A.  This ongoing management may include, *inter alia*, periodic increases in contributions, periodic rebalancing of accounts, reoptimization of investment allocations, and adjustment of the portfolio  risk levels based on a changing retirement horizon.  *Id.*  The PAM program also provides for in-person conferences with investment advisor representatives to discuss the foundations and objectives of the participant's account, and readjustments as needed.  Smart$avings Rollout Brochure at 9.  The multitude of services provided in connection with the PAM program are succinctly summarized in a brochure provided to Nestlé Plan participants in advance of its implementation:

> Professional Account Manager can be added to your Savings Plan account if you want a professional investment advisory service to manage your account, build a personalized retirement plan, select investment funds for you and provide one-on-one support to help keep you on track. This program will also implement the recommended investment changes for you and will continue to monitor your Savings Plan account and make changes as appropriate. Professional Account Manager is designed for the hands-off participant who wants to leave the management of his or her Savings Plan account with a professional advisor. There is a fee to use the Professional Account Manager program.

Smart$avings Rollout Brochure at 6.

The fee schedule for PAM services is set forth in the Agreement, and provided to participants before enrollment.  Agreement, Exhibit B; Smart$avings Rollout Brochure at 9. VRA charges each participant who enrolls in PAM 50 basis points (0.50%) for the first $100,000 under management; 40 basis points (0.40%) for the next $150,000, and 25 basis points (0.25%) for amounts in excess of $250,000.  *Id.*  When the Program Participation Rate, "determined by dividing the value of Plan assets under management in the Program by the aggregate value of

Plan assets eligible for management in the Program," exceeds 20%, the PAM fee schedule is stepped down, using the same thresholds, to 45/35/20 basis points.  Agreement, Exhibit B. Neither the PAM fee schedule nor any other fees in the Agreement are subject to the discretion or control of VRA.  VRA also charges a Platform Fee of $8.00 per year in connection with the Agreement.  *Id.*  The PAM fees appear to be the subject of Plaintiff's claims, although she makes passing reference to the Platform Fees.  *See* Compl. ¶ 46.

## II.  Plaintiff's Allegations.

Plaintiff purports to bring claims predicated on the Agreement between "Voya" and Nestlé.  Plaintiff does not challenge as excessive or unreasonable in and of themselves the fees payable under the Agreement, which were negotiated between Nestlé as a fiduciary of the Plan and VRA as a service provider to the Plan.  Nor does Plaintiff assert any facts that could plausibly support such a challenge.  Rather, the Complaint alleges that Financial Engines provides "virtually all of the services in connection with the advice program," *id.* ¶ 11, and that "Voya," defined as all of the Voya Defendants, *id.* ¶ 1, "provides no material services in connection with the advice program."  *Id.* ¶ 16.  Accordingly, Plaintiff alleges, any portion of the fees charged pursuant to the Agreement that "Voya" retained and did not pass along to Financial Engines is "*per se* unreasonable."  *Id.* ¶ 19; *see also id.* ¶ 11.  In other words, Plaintiff does not object to the fees mandated by the Agreement; her only complaint is that "Voya" should not be permitted to keep any of them.  All of Plaintiff's claims are premised on this parsing of the fee.

The Complaint asserts two separate causes of action under ERISA.  In Count I, Plaintiff alleges that "Voya" is a fiduciary of the Plan, *id.* ¶¶ 40-41, 63, and that "Voya" breached its fiduciary obligations, specifically its duty of loyalty, pursuant to ERISA §§ 406(b)(1) and 406(b)(3), in connection with the fees retained by "Voya" pursuant to the Agreement.  All of

Plaintiff's allegations related to "Voya's" purported fiduciary status rest upon the terms of the Agreement pursuant to which investment advice is provided to Plan participants. *Id.* ¶ 63 (alleging Voya "acted as a fiduciary" by "agreeing to provide investment advice . . . hiring [Financial Engines], . . . [and] selecting Financial Engines"). Similarly, Plaintiff's allegations regarding Voya's breach of its purported fiduciary obligations center on the terms of the Agreement. *See id.* ¶ 64.

In Count II, Plaintiff alleges that "Voya" is a party in interest as well as a fiduciary, *id.* ¶ 69, and has violated ERISA § 406(a)(1)(C) by engaging in a prohibited transaction, *e.g.,* furnishing services as a party in interest to the Plan. "Voya," Plaintiff claims, cannot take advantage of the prohibited transaction exemption in ERISA § 408(b)(2) because it "provided no material services in connection with the investment advice provided to participants." *Id.* ¶ 72. Accordingly, charges for "nonexistent or minimal services" were "excessive and unreasonable," *id.* ¶ 73, and "Voya" has caused the Plan "to engage in prohibited transactions in violation of ERISA § 406(a)." *Id.* In the alternative, even if there was no prohibited transaction Plaintiff alleges that "Voya is liable for disgorgement of the excessive compensation it received." *Id.* ¶ 74.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*). Particularly pertinent to the Court's assessment of the Complaint in this case is the Supreme Court's admonishment that, "[t]hreadbare recitals of the

7

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  While factual allegations in a complaint generally are accepted as true, such statements "that are contradicted by documents properly considered on a motion to dismiss need not be accepted." *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 396 (S.D.N.Y. 2005).

The Second Circuit has recognized the importance of Rule 12(b)(6) motions in ERISA actions because of the "ominous" burdens of "probing and costly inquiries and document requests" attendant on claims for breach of fiduciary duty.  *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("*PBGC*").  Those burdens "elevate[] the possibility that 'a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.'" *Id.* (quoting *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (alteration and internal quotation marks omitted)).  Consequently, "the price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings . . . Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Id.* (quoting *DM Research, Inc. v. Coll. of Am. Pathologists,* 170 F.3d 53, 55 (1st Cir. 1999)).

## ARGUMENT

## I.     Plaintiff's Claims do not Satisfy the Threshold Plausibility Standard.

### A.     Plaintiff Fails to Assert Any Plausible Basis for Claims Against Voya Financial, VIPS, or VIM.

Rather than identifying particular conduct on the part of each of the four defendants, the Complaint lumps all defendants together, Compl. ¶ 1, and proceeds to levy undifferentiated

factual assertions and legal conclusions collectively against them.  *See*, *inter alia*, Compl. ¶¶ 17 (referring to an arrangement between Voya and Financial Engines); 19 ("Voya has interposed itself between the participants and Financial Engines . . ."); 45 ("On information and belief, [Financial Engines] and Voya are splitting the asset-based fee . . ."); 63 ("Voya acted as a fiduciary to Plaintiff, the Nestlé Savings Plan, and the Plans . . ."); 70 ("As an investment advisor to the Nestlé Savings Plan, the Plans and their participants, Voya is a fiduciary to the Nestlé Savings Plan, the Plans, and their participants.").  A complaint that does not attribute purported actions to specific, individual defendants fails to "plead[] factual content that allows the court to draw the reasonable inference" that any particular defendant "is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," the complaint fails to satisfy Fed. R. Civ. P. 8.  *See Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001); *see also Medina v. Bauer*, 2014 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8.").

The problems with collective, imprecise pleadings are on full display here.  Plaintiff attempts to attribute liability in connection with the Nestlé investment advice program to four separate corporate entities, even though three of them have nothing to do with the alleged claims arising from the program.  Consider:

- Plaintiff's claims arise in connection with the investment advice program set forth in the Agreement between VRA and Nestlé.  None of the other defendants are parties to the Agreement, and neither Voya Financial nor VIM is even mentioned in it.  *See* Agreement, *passim*.  The only mention of VIPS is found in the Description of Services, Exhibit A to the Agreement, where VIPS is noted as the recordkeeper of the Plan.  Plaintiff acknowledges that the "advice program [is offered] through Voya Retirement Advisors, LLC," Compl. ¶ 10, but inexplicably proceeds to assert claims against Voya Financial, VIM and VIPS without any

factual support.

- The fees about which Plaintiff complains are paid to VRA, not to any other entity, *see* Agreement, Exhibit B, and there is no allegation to the contrary in the Complaint.  Indeed, early in the Complaint Plaintiff acknowledges that fees for investment advice are charged by VRA, not any of the other defendants.  Compl. ¶ 10 ("Voya Retirement Advisors charges each participant 50 basis points (.50%) for the first $100,000 of the individuals account managed by Voya Retirement Advisors, 40 basis [sic] for the next $150,000, and 25 basis points for amounts in excess of $250,000.").  Again, despite this allegation, Plaintiff still asserts claims against Voya Financial, VIM and VIPS.

- Plaintiff's purported grounds for fiduciary status all are predicated on the Agreement and the investment advice program contained therein.  *See* Compl. ¶ 63.  Voya Financial, VIM and VIPS have no responsibilities under the Agreement and performed no investment advisory services in connection therewith; and the Complaint asserts no facts to suggest that they did.

- Plaintiff's purported basis for non-fiduciary liability similarly is grounded in the Agreement.  *See* Compl. ¶¶ 72-73.

Simply put, Plaintiff cannot attribute to Voya Financial, VIM, or VIPS responsibilities belonging solely to VRA, as evidenced on the face of the Agreement, by alleging vaguely participation in the program by all "Defendants."  *See Lehman v. Garfinkle*, 2009 WL 2973207, at *7 (S.D.N.Y. Sept. 16, 2009) (dismissing a complaint against certain defendants not party to a contract attached to the complaint where plaintiffs implausibly alleged responsibilities related to that contract were borne by all "Defendants"); *Advanced Capital Commercial Group, Inc. v. Suarez*, 2013 WL 5329254, at *4 (E.D.N.Y. Sept. 20, 2013) (similar).  The Complaint here contains no plausible allegations that Voya Financial, VIM, or VIPS committed any of the conduct about which Plaintiff complains; neither does it plausibly allege that these co-defendants are fiduciaries with respect to the conduct at issue, nor that they have any non-fiduciary liability in connection with the investment advice program.[6]  The claims against Voya Financial, VIM

---

[6] Indeed, Voya Financial, VIPS or VIM are so far removed from the conduct asserted in the Complaint that it is doubtful that Plaintiff has satisfied the "irreducible constitutional minimum" requirements for Article III standing to assert claims against them.  *Steel Co. v. Citizens for a*

and VIPS all should be dismissed.

**B.** **Plaintiff's Assertion that VRA Did Not Provide "Any Material Services" in Connection with the Advice Program is Unfounded and Implausible.**

The gravamen of the Complaint is that VRA "does not actually provide any material services in connection with the advice provided to participants."  Compl. ¶ 11; *see also* ¶ 19 (charging "for performing virtually no services is *per se* unreasonable").  Plaintiff fails to provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  In fact, Plaintiff asserts *no* facts in support of her conclusory allegation; accordingly, it is "not entitled to be assumed true."  *Iqbal*, 556 U.S. at 681; *see also id.* ("It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").  Plaintiff cannot rely on unfounded speculation to avoid dismissal.

Plaintiff's unsupported conclusion also is demonstrably incorrect.  Allegations that are contradicted by documents integral to or referenced in the Complaint are not entitled to the presumption of truth and are insufficient to defeat a motion to dismiss.  *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by [a document integral to the complaint], those allegations are insufficient to defeat a motion to dismiss."); *Sgaliordich v. Lloyd's Asset Mgmt.*, 2012 WL 4327283, at *4 (S.D.N.Y. Sept. 20, 2012) (citing *Matusovsky*).  As described in detail above, the asset-based fee about which Plaintiff complains is charged when participants elect to use PAM services.  *See* Agreement, Exhibit B.  Contrary to the conjecture in the Complaint, VRA by contract is required to perform a wide range of services in connection with PAM, including, *inter alia*, maintaining a call center,

---

*Better Env't*, 523 U.S. 83, 103 (1998).  In particular, Plaintiff lacks "causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of" Voya Financial, VIPS or VIM.  *Id.*

engaging in telephone conferences with participants, collecting information about investments outside the Plan in order to provide more informed recommendations, and providing "ongoing management of [participants'] account[s] which may include periodic increases of contributions to their accounts, periodic rebalancing/optimizing investment allocations and adjusting the portfolio risk level and resulting allocation over time based on their changing retirement time horizon[.]"  Agreement, Exhibit A.  The Smart$avings Rollout Brochure referenced as Exhibit A to the Complaint provides a concise summary of the comprehensive services provided in connection with the PAM program:

**ING ADVISOR SERVICES AT-A-GLANCE**

| Details: | Personal Online Advisor | Professional Account Manager |
|---|---|---|
| Access | Access virtually 24/7 to retirement and investment advice through the Nestlé Smart$aving web site. | Log in via the Nestlé Smart$aving web site or contact a Representative via the Nestlé Smart$aving Call Center; ING Investment Advisor Representatives are available from 8:00 a.m. to 8:00 p.m. (Eastern Time), excluding NYSE holidays. |
| Getting Advice | Move through the online service at your own pace. Use the interactive tools to change your strategy and see how your forecast is affected. | Your ING Investment Advisor Representative works with you to review your retirement savings and investments, walk you through a personal assessment and suggest changes. |
| Making Changes | Receive a Retirement Plan Preview online and then implement your advice for your Savings Plan account. | When you enroll in Professional Account Manager, your portfolio is automatically managed for you. |
| Ongoing Advice | Do-it-yourself account management. Sign up for quarterly e-mail advice and log on at your convenience to view an updated forecast and make changes. | Receive quarterly Retirement Updates, automatic rebalancing of your account and e-mail reminders to check in as your financial situation changes. |
| Fees | There are no additional fees to use the online service. | Free initial consultation. If you enroll, there is a monthly program fee charged to your Savings Plan account – see page 1 for details. |
| Assets Covered | Funds within your Savings Plan account as well as any outside retirement accounts you add to the tool. | Savings Plan balances, excluding balances within the Mutual Fund Window¹ or any outside retirement accounts. Outside account balances are taken into consideration in the management of your account, but specific advice is not provided for these balances. |

Smart$avings Rollout Brochure at 10; *see also id.* at 6, 9; Agreement, Exhibit A.

The plain terms of the Agreement, as well as public filings and documents referenced in the Complaint, establish the myriad services performed by VRA in connection with the managed account program.  Plaintiff's allegations that VRA "did not provide any material services" in connection with the Agreement are utterly implausible.  *Iqbal*, 556 U.S. at 678.  Thus, Plaintiff has not satisfied the basic pleading requirements to proceed with a putative ERISA class action.

*PBGC*, 712 F.3d at 719.

## II.      VRA Is Not a Fiduciary With Respect to the Challenged Conduct.

ERISA provides in pertinent part that:

a person is a fiduciary with respect to a plan *to the extent* (i) he exercises any
discretionary authority or discretionary control respecting management of such
plan or exercises any authority or control respecting management or disposition of
its assets, (ii) he renders investment advice for a fee or other compensation, direct
or indirect, with respect to any moneys or other property of such plan, or has any
authority or responsibility to do so, or (iii) he has any discretionary authority or
discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

It is axiomatic that fiduciary liability attaches only when an alleged fiduciary "was acting

as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to the*

*complaint.*"  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added).  *See also Coulter*

*v. Morgan Stanley Co., Inc.,* 753 F.3d 361, 366 (2d Cir. 2014) (holding that an entity is a *de facto*

fiduciary only "to the extent" it "(a) exercises any discretionary authority or discretionary control

respecting management of such plan or exercises any authority or control respecting

management or disposition of its assets, or (b) has any discretionary authority or discretionary

responsibility in the administration of such plan") (quoting 29 U.S.C. § 1002(21)(A)) (internal

quotations omitted).

Applying these fundamental concepts, the Second Circuit has long held that a potential

service provider "is not an ERISA fiduciary with respect to the terms of the agreement for his

compensation."  *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (1987).

Recent appellate decisions in other circuits have confirmed this holding.  In *Santomenno v. John*

*Hancock Life Ins. Co. (USA)*, 768 F.3d 284 (3d Cir. 2014), the Third Circuit distilled the

common-sense reason for this rule down to one sentence:

This makes sense: when a service provider and a plan trustee negotiate at arm's

> length over the terms of their agreement, discretionary control over plan management lies not with the service provider but with the trustee, who decides whether to agree to the service provider's terms.

*Id.* at 293 ("holding that a service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation . . . if it does not control the named fiduciary's negotiation and approval of those terms") (citing *Hecker v. Deere & Co.,* 556 F.3d 575, 583 (7th Cir. 2009), *supplemented by* 569 F.3d 708 (7th Cir. 2009); *see also Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013) (holding that product design decisions to not transform a service provider into a fiduciary because the plan sponsor "was free to seek a better deal" elsewhere).[7]

That is precisely the situation here.  Nestlé, the Plan sponsor and fiduciary, negotiated with VRA regarding the provision of investment advisory services to Nestlé Plan participants. Those negotiations culminated in the Agreement.  Nestlé freely entered into the Agreement, and was free to reject the arrangement with VRA in favor of an alternative provider.  *See McCaffree*, 811 F.3d at 1003 (8th Cir. 2016) (holding that a provider does not exercise discretionary authority when the plan sponsor "remained free to reject [the provider's] terms and contract with an alternative service provider offering more attractive pricing").  Consistent with its fiduciary obligations, Nestlé was the ultimate decision maker with respect to entering into an integrated Agreement with VRA whereby (i) VRA contracted with Nestlé to provide investment advisory services to participants, in connection with which (ii) both VRA and Financial Engines would engage in specified and different functions to provide those services under the Agreement.  *See*

---

[7] *See also McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) ("service provider's adherence to its agreement with a plan administrator does not implicate any fiduciary duty where the parties negotiated and agreed to the terms of that agreement in an arm's-length bargaining process"); *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003) (adherence to contract term negotiated at arm's length does not give rise to ERISA fiduciary status); *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 470 (S.D.N.Y. 2014) ("contractors that receive contractually-established commission rates are not fiduciaries as to their compensation") (citations omitted).

Agreement § 1 ("Such Participant investment advice will be provided by [VRA] in the manner described in Exhibit A ("Investment Advisory Services"), including the utilization of Financial Engines Advisors, LLC ("Financial Engines") as described therein.").  VRA was not a fiduciary with respect to that decision, and accordingly cannot be sued for breach of a fiduciary duty in connection with the fees charged under the Agreement.  *See PBGC,* 712 F.3d at 730 ("To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue.") (citing 29 U.S.C. § 1109(a)).

This Court recently rejected a similar attempt to impose fiduciary liability on a service provider.  In *Allen v. Bank of Am. Corp.*, 2016 WL 4446373 (S.D.N.Y. Aug. 23, 2016) (Schofield, J.), plaintiffs alleged that the defendants breached their fiduciary duties and engaged in prohibited transactions through alleged manipulation of foreign currency.  *Id.* at *1. As in this case, the *Allen* plaintiffs failed to assert anything more than conclusory allegations that the defendants were fiduciaries *with respect to the challenged conduct*.  This Court consequently found that the vague allegations in the complaint regarding fiduciary status were "insufficient to plead that Defendants exercised the requisite discretion and control over plan assets to be ERISA fiduciaries."  *Id.* at *7.  The Court further held, citing *F.H. Krear*, that the defendant did not act as a fiduciary with respect to negotiating their compensation.  *Id.* at *7-*8.

Plaintiff appears poised to argue that VRA has the power to control its own compensation after entering into the Agreement with VRA, and therefore has fiduciary obligations with respect to its compensation.  In Plaintiff's estimation, VRA has "control" over its compensation because it might renegotiate its arrangement and pay Financial Engines less for the support it provides to VRA.  *See F.H. Krear*, 810 F.2d at 1259 (noting that "after a person has entered into an

agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation").

This badly misunderstands the Second Circuit's caveat.  This Court recently had occasion to examine this issue in *Allen*, noting that, "[t]he touchstone [for administrative service provider liability] was a transfer of control over the plan or its assets from the plan to the provider which would enable the provider to manipulate the plan or its assets to its own benefit."  *Allen*, 2016 WL 4446373, at *8 (quoting *Sirna v. Prudential Secs., Inc.*, 964 F. Supp. 147, 150 (S.D.N.Y. 1997)).  Here, the compensation received by VRA is determined by the number of participants in the Nestlé Plan (which determines the Platform Fee) and the total Plan assets of participants who elect to enroll in the PAM program (which determines the PAM fees).  *See* Agreement, Exhibit B; Smart$avings Rollout Brochure at 9.  Both of these metrics are outside of VRA's control; VRA has no authority to "manipulate the plan or its assets to its own benefit."  *Sirna*, 964 F. Supp. at 150.  None is alleged plausibly in any event; Plaintiff's position again depends on reinventing the concept of "compensation."  Rather than recognizing that VRA's compensation is set forth in the Agreement, Plaintiff attempts to redefine VRA's compensation as any amounts left over after VRA pays Financial Engines for its efforts under the Agreement.  There is no basis in law or fact to ignore the terms of the Agreement.

Moreover, there simply is no support for Plaintiff's theory that amounts paid to a service provider remain assets of the plan.  Plan assets are "identified based on 'ordinary notions of property rights'" and "include any property, tangible or intangible, in which the plan has a beneficial ownership interest."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 105 (2d Cir. 2011) (quoting U.S. Dep't of Labor, Advisory Op. No. 93–14A (May 5, 1993)).  Nestlé has no

ownership interest in compensation once paid to VRA pursuant to the Agreement.   That compensation is no longer considered a plan asset, and VRA's use of those funds to pay Financial Engines (or for any other purpose) does not constitute the exercise of control over a plan asset.

For all of these reasons, Count I fails as a matter of law.

## III. Plaintiff Fails to Allege a Prohibited Transaction.

### A.   The Threshold Predicate for an ERISA § 406(a) Claim is Lacking.

Plaintiff alleges that VRA engaged in a prohibited transaction pursuant to ERISA § 406(a)(1)(C), which "generally prohibits the direct or indirect furnishing of services between a plan and a party-in-interest."   Compl. ¶ 67.   For the reasons set forth above, Count II fails because defendants are not fiduciaries with respect to the alleged wrongful conduct, which eliminates a necessary predicate for an ERISA § 406(a) violation, *i.e.*, that a fiduciary has caused a prohibited transaction with a party in interest.   *Lockheed Corp. v. Spink*, 517 U.S. 882, 888-89 (1996) (noting that "there can be no violation of § 406(a)(1)" unless there is a showing that a fiduciary caused a prohibited transaction with a party in interest).   Nor has Plaintiff alleged that Nestlé, or any other non-defendant fiduciary, caused the Plan to engage in a prohibited transaction or otherwise breached its fiduciary obligations in retaining VRA.   *Id.*; *see also Allen*, 2016 WL 4446373 at *9 ("the Complaint does not allege how any *non-Defendant Plan fiduciary* caused its plan to engage in a transaction with actual or constructive knowledge that it would violate § 406") (emphasis added).

### B.   Plaintiff Fails to Allege the Total Compensation is Unreasonable.

Plaintiff acknowledges the prohibited transaction exemption found at ERISA § 408(b)(2), which permits "contracting or making reasonable arrangements with a party in interest for office

space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor," but avers that VRA cannot avail itself of its protection because it "provided no material services in connection with the investment advice provided to participants[.]"  Compl. ¶¶ 71-72.

As explained above, the allegation that VRA provided no services is utterly implausible. The Agreement expressly provides that in return for operating the entire investment advice program, including both Online Advice and the Professional Account Management, set forth in the Agreement, VRA will be paid (i) a Platform Fee (paid annually by Nestlé), and (ii) a Professional Account Manager Fee (paid on a monthly basis by participants who decide to enroll in the PAM program).  Agreement, Exhibit B.  The services VRA provides, which extend far beyond those for which it subcontracts with Financial Engines, are disclosed and quantified in documents central to the Complaint.

Even were it otherwise, and there was some plausible allegation that VRA did not provide substantial services in addition to the advice provided by Financial Engines, the Complaint would still fail because it does not allege that the *total* compensation for investment advisory services under the Agreement is unreasonable or excessive, but only that VRA's retained share of the fees paid pursuant to the Agreement was excessive.

This assertion is flatly inconsistent with the approach ERISA mandates for plan fiduciaries and their services providers, which is to ensure that the total compensation paid pursuant to the Agreement is reasonable, as determined by assessment of the totality of the services provided vis-a-vis the total fees charged.  Most recently, the Department of Labor confirmed this approach in its new Fiduciary Rule, where it conformed the new Rule to the existing practice of "looking at the reasonableness of the aggregate compensation for all of the

services." *See Preamble*, 81 Fed. Reg. 21,055 (April 8, 2016) (making clear that the Final Rule retained the ERISA § 408(b)(2) formulation of looking at the reasonableness of the *aggregate* compensation for all of the services to the retirement investor).  Thus, with no allegation that the total fees under the Agreement are unreasonable or excessive, the Complaint fails to plead an essential element of a prohibited transaction claim.

### C.    The Relief Plaintiff Requests is Unavailable.

Plaintiff asks that VRA be required to disgorge the purportedly "excessive compensation" it received.  Compl. ¶ 74.[8]  The request for "disgorgement" fails "to allege that any of the money sought to be disgorged can be traced to particular funds or property in" VRA's possession.  *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117 at *8 (C.D. Cal. Aug. 5, 2016).  Even though Plaintiff's demand is couched as one for "disgorgement," it actually is a request for money damages.  Plaintiff seeks disgorgement of "excessive compensation," defined as *any* compensation received by VRA.  Compl. ¶ 16 (alleging the purpose of the Agreement is "to allow [VRA] to collect a fee to which it is not entitled").  In other words, Plaintiff seeks "all monies received" by VRA.  Such a remedy is not permitted under ERISA § 502(a)(3).  *See Moreno v. Deutsche Bank Americas Holding Corp.*, 2016 WL 5957307, at *9 (S.D.N.Y. Oct. 13, 2016) (Schofield., J.) (citing *Urakhchin*).

Accordingly, Count II fails to state a claim upon which relief can be granted.

---

[8] As set forth above, VRA's compensation is defined by the Agreement, and the Complaint does not allege that the fees paid pursuant to the Agreement are excessive in and of themselves.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted,

Dated:  November 11, 2016

/s/ *James F. Jorden*
James F. Jorden, admitted *pro hac vice*
Waldemar J. Pflepsen, Jr., admitted *pro hac vice*
W. Glenn Merten, admitted *pro hac vice*
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
Phone: (202) 965-8100

Robert W. DiUbaldo
CARLTON FIELDS JORDEN BURT, P.A.
405 Lexington Avenue, 36th Floor
New York, NY 10174-0002
Phone: (212) 785-2577

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of November, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send electronic notification of such filing to all counsel of record.

/s/ *W. Glenn Merten*
W. Glenn Merten