USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/20/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
LISA PATRICO,                                                :
                              Plaintiff,                     :
                                                             :                 16 Civ. 7070 (LGS)
              -against-                                      :
                                                             :                 **OPINION AND ORDER**
                                                             :
VOYA FINANCIAL, INC., et al.,                                :
                              Defendants.                    :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Lisa Patrico brings this putative class action on behalf of all participants and beneficiaries of the Nestle 401(k) Savings Plan (the "Plan") "and All Other Similarly Situated Individual Account Plans" against Defendants Voya Financial, Inc.; Voya Institutional Plan Services, LLC; Voya Investment Management, LLC; and Voya Retirement Advisors, LLC ("VRA"). Plaintiff claims that Defendants breached their fiduciary duties and engaged in self-interested transactions in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., by charging excessive fees for investment advisory services offered to 401(k) plan participants. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion is granted.

I. **BACKGROUND**

      The following facts are drawn from the Complaint and documents that are integral to the Complaint. They are assumed to be true for the purposes of this motion. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

      Plaintiff is a participant in the Plan. The Plan entitles participants to direct the investment of their account balances among various investment options available under the Plan. The investment options are selected by Nestle USA, Inc. ("Nestle"), the sponsor of the Plan. To give

Plan participants access to investment advice, Nestle entered into an Investment Advisory Services Agreement with Defendant VRA (the "Nestle-VRA Agreement").

Pursuant to the Nestle-VRA Agreement, VRA offers two investment advice programs -- a self-service, online program called "Personal Online Advisor" and a managed account service called "Professional Account Manager." As compensation for the programs, Nestle pays VRA a "Platform Fee" of $8 per year for each Plan participant with a balance in the Plan, or $7 if the program participation rate exceeds 10%. Plan participants who enroll in the Professional Account Manager program also are charged a fee based on the value of each participant's account: 50 basis points (0.50%) for the first $100,000 invested, 40 basis points for the next $150,000 invested and 25 basis points for amounts in excess of $250,000 invested. If participation in the program exceeds 20% (as measured by the value of Plan assets under management), the fee schedule is stepped down, using the same thresholds, to 45, 35 and 20 basis points.

Although VRA offers the programs, Financial Engines Advisors, LLC ("Financial Engines") provides the actual investment advice. The Complaint describes Financial Engines as "the preeminent purportedly independent investment advice provider to 401(k) plan participants." VRA and Financial Engines have an agreement, referred to by Plaintiff as the "Master Agreement," which states that "Financial Engines will provide its discretionary managed account portfolio management service, the Personal Asset Manager Program, to enable Advisor [VRA] to brand and offer the same as the Professional Account Manager to Program and potential Program Participants." This subcontract with Financial Engines is disclosed in the Nestle-VRA Agreement and in a brochure for participants announcing the investment advice program.

Plaintiff elected to participate in the investment advice program and utilized Financial Engines' services. In this action, Plaintiff challenges VRA's role in the program, in essence alleging that it charged excessive fees. Plaintiff alleges that VRA "provides no material services in connection with the advice program, and the only reason for structuring the advice service as being provided by [VRA] with sub advisory services by Financial Engines is to allow [VRA] to collect a fee to which it is not entitled." Plaintiff claims that, by structuring the investment advice program this way, VRA and the other Defendants breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA.

## II. STANDARD

"On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor." *Doe*, 831 F.3d at 48. "In determining the adequacy of the complaint, the court [also] may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *accord Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

As explained below, Defendants' motion to dismiss is granted as to both the breach of fiduciary duty claim and the prohibited transaction claim.

### A. Breach of Fiduciary Duty

Count I of the Complaint alleges in sum that Defendants breached their fiduciary duties to Plan participants by charging unreasonable and excessive fees for services provided by Financial Engines. This breach of fiduciary duty claim under ERISA § 404, 29 U.S.C. § 1104, is dismissed because the Complaint fails to allege facts showing that Defendants were ERISA fiduciaries with respect to their fees.

"In every case charging breach of ERISA fiduciary duty the threshold question is whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) (alterations omitted) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). ERISA fiduciaries are those named under the Plan or those who exercise fiduciary functions. *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 613 (S.D.N.Y. 2015). The Complaint does not allege that any Defendant is a named fiduciary under the Plan. The parties' dispute concerns whether Defendants were fiduciaries because of the functions they performed.

Under ERISA, a person[1] is a fiduciary "to the extent" that the person (i) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," (ii) "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so," or (iii) "has any

---

[1] Under ERISA, the term "person" can mean an individual or an entity. *See* 29 U.S.C. § 1002(9).

discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan . . . ."). The Supreme Court has emphasized the limiting effect of the statutory phrase "to the extent" because an ERISA fiduciary "may wear different hats." *Pegram*, 530 U.S. at 225. Accordingly, "a person may be an ERISA fiduciary with respect to certain matters but not others." *Coulter*, 753 F.3d at 366 (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).

Plaintiff's breach of fiduciary duty claim is based on the allegedly excessive fees that VRA charges for the investment advice program. In *F.H. Krear*, the Second Circuit held that when a service provider that has no relationship to an ERISA plan is negotiating a contract with that plan, the service provider "is not an ERISA fiduciary with respect to the terms of the agreement for [its] compensation." 810 F.2d at 1259. The rationale for this rule is that a service provider in such a situation "has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement." *Id.* After the service provider enters into an agreement with a plan, however, "the agreement may give [the service provider] such control over factors that determine the actual amount of its compensation that [it] thereby becomes an ERISA fiduciary with respect to that compensation." *Id.* In both situations, fiduciary status depends on the service provider's ability to control unilaterally the amount of compensation it receives. "[A]n agent with a contractually-established commission rate is not, without other indicia, a fiduciary to the plan." *United States v. Glick*, 142 F.3d 520, 528 (2d Cir. 1998).

5

Here, the Complaint fails adequately to allege that any Defendant exercised the requisite control over its compensation and thus fails to allege that any Defendant was an ERISA fiduciary with respect thereto. Although this case differs from the first scenario described in *F.H. Krear* because at least some Defendants had a prior relationship with the Plan, the Complaint makes no non-conclusory allegation that Defendants asserted "any control over [Nestle's] decision whether or not, and on what terms, to enter into" the Nestle-VRA Agreement. *F.H. Krear*, 810 F.2d at 1259. Rather, the Complaint alleges that "Nestle . . . selected the investment advice service as an optional benefit from the menu of services offered by Voya for the benefit of Plan participants." Because Nestle was free to select a different investment advice service provider or none at all, Defendants could not have unilaterally controlled the compensation they would receive under the Nestle-VRA Agreement. *See id.* ("As to the terms and conditions upon which it became a provider, therefore, [defendant] entered into an arm's length bargain presumably governed by competition in the marketplace . . . ." (quoting *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1132 (7th Cir. 1983))); *see also McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) ("Up until it signed the agreement with [defendant], [the plan sponsor] remained free to reject its terms and contract with an alternative service provider offering more attractive pricing or superior investment products. Under such circumstances, [defendant] could not have maintained or exercised any 'authority' over the plan and thus could not have owed a fiduciary duty under ERISA.").

The Complaint also fails adequately to allege that Defendants became ERISA fiduciaries with respect to their compensation after the Nestle-VRA Agreement was executed. Under the Nestle-VRA Agreement, VRA's compensation for the program is a function of two factors -- the number of participants with a balance in the Plan and the total Plan assets of participants in the

6

program. Neither VRA nor any other Defendant can control those factors; they depend solely on the Plan participants' investment decisions. This lack of control by Defendants distinguishes this case from the second scenario described in *F.H. Krear* and the cases relied on by Plaintiff, in which a service provider was found to be an ERISA fiduciary because it had discretion or control over the factors determining its compensation. *See F.H. Krear*, 810 F.2d at 1259 (citing *Sixty-Five Sec. Plan v. Blue Cross & Blue Shield of Greater N.Y.*, 583 F. Supp. 380, 387–88 (S.D.N.Y. 1984)); *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 470 (S.D.N.Y. 2014) (concluding that "the Complaint pleads that [defendant] exercised discretion in setting the management fees"); *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 197 (D. Mass. 2008) ("[Defendant] is a fiduciary because the Contract gave it discretionary authority to determine the amount of its compensation.").

Plaintiff argues that Defendants controlled their compensation by controlling the proportion of the fee that went to Financial Engines, and in that regard were ERISA fiduciaries. This argument is unpersuasive. First, the Nestle-VRA Agreement disclosed Financial Engines as the ultimate source of the investment advice, so Nestle exercised final authority over this arrangement and was free to reject it or seek better terms. Consequently, Defendants were not ERISA fiduciaries with respect to any fee splitting arrangement with Financial Engines. *See F.H. Krear*, 810 F.2d at 1259; *see also Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 293 (3d Cir. 2014) ("[A] service provider owes no fiduciary duty to a plan with respect to the terms of its service agreement if the plan trustee exercised final authority in deciding whether to accept or reject those terms."). Second, once the rate of compensation was set by the Nestle-VRA Agreement, nothing in that agreement or ERISA prevented VRA from reducing its costs in administering the program and retaining the

7

difference. *See United Teamster Fund*, 39 F. Supp. 3d at 470 ("[R]etaining payments in excess of costs does not create a fiduciary duty where the contract expressly authorizes the withholding, or where the contract simply does not require a contractor to pass along all of the savings." (internal quotation marks and citations omitted)).

Because Defendants are not ERISA fiduciaries with respect to the fees charged for the investment advice service, they cannot be held liable under ERISA for breach of fiduciary duty with respect to those fees. Count I is therefore dismissed.

### B. Prohibited Transaction

Plaintiff's prohibited transaction claim under ERISA § 406(a), 29 U.S.C. § 1106(a) is dismissed because the Complaint fails to allege that any ERISA fiduciary had actual or constructive knowledge that Defendants were receiving allegedly excessive compensation for the investment advice program.

"Section 406 of ERISA supplements the general fiduciary obligations set forth in § 404 by prohibiting certain categories of transactions believed to pose a high risk of fiduciary self-dealing." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006). Section 406(a)(1)(C) provides:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest.

ERISA defines a "party in interest" to include service providers. *See* 29 U.S.C. § 1002(14)(B). Under ERISA § 408(b)(2), contracting with a party in interest for "legal, accounting, or other services necessary for the establishment or operation of the plan" is exempt from the prohibited transaction rule of § 406(a)(1) provided that "no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

The Supreme Court has held that equitable claims based on § 406(a) violations may be brought against non-fiduciaries under ERISA § 502(a)(3). *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245–51 (2000) (holding that a civil action may be brought against "an 'other person,' who 'knowingly participates' in a fiduciary's violation" of § 406(a)). In *Harris*, the Supreme Court explained that a plaintiff must prove all of the elements of a § 406(a) claim in order to prevail, including that a plan fiduciary had "actual or constructive knowledge of the facts" that give rise to the § 406(a) violation:

> [T]he transferee [of ill-gotten trust assets, i.e., the non-fiduciary and here allegedly the Defendants] must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful. Those circumstances, in turn, involve a showing that the plan fiduciary, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction.

*Id.* at 251.

Here, the Complaint fails to allege that any ERISA fiduciary caused the Plan to pay VRA the fees prescribed by the Nestle-VRA Agreement with actual or constructive knowledge that the fees were excessive. As explained above, Defendants are not ERISA fiduciaries with respect to the fees. Financial Engines is not an ERISA fiduciary with respect to the fees for the same reasons -- namely that it does not have the requisite control over the amount of compensation it receives. *See F.H. Krear*, 810 F.2d at 1259; *Glick*, 142 F.3d at 528. Nestle is a named fiduciary under the Plan, but the Complaint does not allege that Nestle knew the compensation under the Nestle-VRA Agreement was excessive, either overall or as to the portion retained by VRA. Because the Complaint fails to allege that any ERISA fiduciary had actual or constructive knowledge that the fees paid to VRA are excessive, Plaintiff's prohibited transaction claim is dismissed.

### C. Defendants Other Than VRA

As to Defendants Voya Financial, Inc., Voya Institutional Plan Services, LLC and Voya Investment Management, LLC, the Complaint is dismissed for the additional reason that it fails to make specific allegations against them. Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (internal quotation marks and citation omitted). A complaint fails this standard when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Id.* Here, the Complaint refers to Defendants collectively as "Voya" and alleges that "Voya" breached its fiduciary duty and engaged in a prohibited transaction. Defendants are distinct legal entities, however, and only VRA is a party to the Nestle-VRA Agreement underlying this dispute. Because the Complaint does not allege any specific relevant conduct by the other Defendants, the Complaint fails to state a claim against them. *See Medina v. Bauer*, No. 02 Civ. 8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they did wrong.").

### D. Leave to Replead

Plaintiffs ask, in the event of dismissal, for leave to file an amended complaint. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Leave to amend also may be denied where the plaintiff

"fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Any motion for leave to replead shall be filed as provided below.[2]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Defendants' motion for oral argument is DENIED as moot. Plaintiff's motion to compel production of the Administrative Services Agreement also is DENIED as moot.

Plaintiff shall file within 21 days any motion to replead, together with a supporting memorandum of law, proposed First Amended Complaint, and a redline of such complaint showing how it differs from the Complaint dismissed herein. No pre-motion conference is necessary. Should Plaintiff decline to file such motion, the case will be closed.

The Clerk of Court is respectfully directed to close the motion at Docket No. 31.

Dated: June 20, 2017
New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

[2] Because the Complaint is dismissed in its entirety for the reasons stated in this Opinion, the Court does not reach Defendants' other arguments, which may be well-founded and which Plaintiff should consider in any motion for leave to replead.