```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/13/2018

LISA PATRICO,

                Plaintiff,

-against-

VOYA FINANCIAL, INC., et al.,

                Defendants.

16 Civ. 7070 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Lisa Patrico initiated this putative class action on behalf of all participants and beneficiaries of the Nestle 401(k) Savings Plan (the "Plan") and "All Other Similarly Situated Individual Account Plans" against Defendants Voya Financial, Inc. ("Voya Financial"); Voya Institutional Plan Services, LLC ("Voya Institutional"); Voya Investment Management, LLC;[1] and Voya Retirement Advisors, LLC ("VRA"). Plaintiff's Complaint was dismissed in its entirety for failure to state a claim. *See Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070, 2017 WL 2684065, at *1 (S.D.N.Y. June 20, 2017). Plaintiff moves for leave to file the First Amended Complaint (the "FAC") under Federal Rule of Civil Procedure 15(a)(2). Plaintiff's motion is denied.

## I. BACKGROUND

      The following alleged facts are based on the FAC and documents that are integral to the FAC, and all factual allegations are assumed to be true for purposes of this motion. *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). The FAC elaborates on Defendants' conduct alleged in the dismissed Complaint, but the gravamen of Plaintiff's claims is unchanged.

---

[1] The FAC no longer names Voya Investment Management, LLC as a Defendant in this action.

**A. Factual Background**

Plaintiff is a participant in the Plan. The Plan permits participants to invest the funds in their accounts using various investment vehicles. The "menu" of investment options is selected by the Plan's sponsor and named fiduciary, Nestle USA ("Nestle").

Under an agreement between Nestle and Defendant Voya Institutional (the "Administrative Services Agreement"), Voya Institutional provides recordkeeping and platform services to the Plan, including keeping track of Plan participants' assets, maintaining a call center and online web portal and preparing periodic account statements. The Administrative Services Agreement makes clear that Voya Institutional does not provide investment advisory services, including managed account services, to Plan participants.[2]

To provide Plan participants access to investment advice, Nestle entered into a separate Investment Advisory Services Agreement with Voya Institutional's subsidiary, Defendant VRA (the "Nestle-VRA Agreement"). Under the Nestle-VRA Agreement, VRA offers Plan participants two options for investment advice: a self-service, online program called "Personal Online Advisor," for which Nestle pays VRA a fixed "Platform Fee," and a managed account service called "Professional Account Manager," for which Nestle pays VRA both the Platform Fee and an additional fee based on the value of each participant's account.

Although VRA offers these programs, Financial Engines Advisors, LLC ("Financial Engines") provides the investment advice pursuant to an agreement between VRA and Financial Engines. Under that agreement, VRA agreed to "provide its discretionary managed account portfolio management service, the *Personal Asset Manager Program*, to enable Advisor to brand

---

[2] The Administrative Services Agreement states that Voya Institutional is not "a fiduciary within the meaning of ERISA, the Investment Advisor's Act of 1940 or any state law with respect to any Plan."

and offer the same as the Professional Account Manager to Program and potential Program Participants." VRA's sub-advisory agreement with Financial Engines is disclosed in the Nestle-VRA Agreement and in a brochure for Plan participants about the program.

The FAC alleges that by structuring its investment advisory program in this way, VRA received a fee for services that it did not provide and to which it was not entitled. Based on this alleged conduct, the FAC alleges that VRA and the other Defendants, including Voya Institutional and its parent Voya Financial, breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA.

### B. Procedural Background

Although the proposed FAC alleges seven more causes of action than the Complaint for a total of nine, both the Complaint and the FAC are based on substantially the same allegations of wrongdoing on the part of Defendants and Nestle, a non-party.

In an Opinion and Order dated June 20, 2017, the Court granted Defendants' motion to dismiss the Complaint, holding that it failed adequately to allege that any Defendant was an ERISA fiduciary with respect to the fees charged for the investment advice service, or that any ERISA fiduciary caused the Plan to pay those fees with actual or constructive knowledge that they were excessive. *Patrico*, 2017 WL 2684065, at *4. The Court further held that the Complaint failed to make any specific allegations as to Voya Financial, Voya Institutional and Voya Investment Management, LLC, and therefore that it failed to state a claim against them.

Pursuant to the June 20, 2017, Order, Plaintiffs were permitted to file a motion for leave to file a proposed amended complaint, which is the subject of this Opinion.

## II. STANDARD

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, No. 16 Civ. 2944, 2018 WL 1054751, at *5 (2d Cir. Feb. 27, 2018) (internal quotation marks omitted). "Leave to amend may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (internal quotation marks omitted). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017). In considering such a motion, a court accepts as true all factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566. The Court may "consider the facts alleged in the complaint, documents attached to it or incorporated by reference, and matters subject to judicial notice." *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. DISCUSSION

### A. Alleged Breach of Fiduciary Duties and Engaging in Prohibited Transactions Against Voya Institutional and VRA in Connection with Alleged Excessive Fees -- Counts II, IV, V and VI

Proposed Counts II, IV, V and VI allege that Voya Institutional and VRA breached their fiduciary duties, or in their capacity as Plan fiduciaries, engaged in prohibited transactions in violation of ERISA. Each of these Counts would be futile as a matter of law because the FAC

4

does not adequately allege that Voya Institutional or VRA were Plan fiduciaries with respect to the challenged conduct.

1. **Applicable Law**

"'In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). ERISA fiduciaries are either named under the plan or exercise discretionary functions. *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 613 (S.D.N.Y. 2015).

Under ERISA, a person who is not named as a fiduciary in the plan is a fiduciary "to the extent" that she: (1) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," (2) "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so," or (3) possesses "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see also Coulter*, 753 F.3d at 366. The Supreme Court has recognized that an ERISA fiduciary "may wear different hats" and is not necessarily acting as a fiduciary whenever her acts affect beneficiaries. *Pegram*, 530 U.S. at 225; *accord Coulter*, 753 F.3d at 366 ("'[A] person may be an ERISA fiduciary with respect to certain matters but not others.'") (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)).

With respect to a service provider's fees, in *F.H. Krear & Co. v. Nineteen Named Trustees*, the Second Circuit explained, "When a person who has no relationship to an ERISA

5

plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him." 810 F.2d at 1259. "[A]fter a person has entered into an agreement with an ERISA-covered plan, the agreement may give [that person] such control over factors that determine the actual amount of [that person's] compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation." *Id.*; *accord Hannan v. Hartford Fin. Servs., Inc.*, 688 F. App'x 85, 89 (2d Cir 2017) (summary order). In either case, fiduciary status depends on the service provider's ability to control unilaterally the amount of compensation it receives. "[A]n agent with a contractually-established commission rate is not, without other indicia, a fiduciary to the plan." *United States v. Glick*, 142 F.3d 520, 528 (2d Cir. 1998); *accord United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 470 (S.D.N.Y. 2014). "Even unreasonable compensation does not make a contractor a fiduciary if the rate is set by contract." *United Teamster Fund*, 39 F. Supp. 3d at 470 (citing *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131–32 (7th Cir. 1983)).

2. **Application**

The viability of Counts II, IV, V and VI depends on whether Voya Institutional and VRA were acting as fiduciaries with respect to the challenged conduct -- negotiating and paying/receiving VRA's fees under the Nestle-VRA Agreement. Specifically, Count II alleges that Voya Institutional and VRA breached their fiduciary duties (as co-fiduciaries with Nestle) by knowingly participating in Nestle's alleged breach of fiduciary duty; Counts IV and VI allege that Voya Institutional and VRA engaged in a prohibited transaction as fiduciaries by paying themselves excessive fees in accordance with the Nestle-VRA Agreement; and Count V alleges

6

that VRA breached its fiduciary duty of loyalty by failing to disclose to Plan participants that its fee was excessive.

Despite these claims, the proposed FAC fails to allege any facts that would result in Voya Institutional or VRA being a fiduciary with respect to VRA's fees, either during the negotiation or after the execution of the Nestle-VRA Agreement. As a matter of law, neither Defendant was acting as a fiduciary while negotiating VRA's fees. "Under 29 U.S.C. §§ 1002(21)(A)(i) and (iii), '"[o]nly discretionary acts of plan . . . management trigger fiduciary duties.'" *Santomenno v. Transamerica Life Ins.*, --- F.3d ----, 2018 WL 1022460, at *4 (9th Cir. 2018) (quoting *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins.*, 768 F.3d 284, 293) (3d Cir. 2014) (alterations in original)). "A service provider is plainly not involved in plan management when negotiating its prospective fees or compiling a list of proposed investment options." *Id.* Section 1002(A)(21)(ii) similarly is unavailing because neither Defendant was rendering investment advice while negotiating the Nestle-VRA Agreement. Any claim based on VRA's allegedly excessive fee arrangement lies against only Nestle, which retained ultimate authority to accept or reject the proposed terms. *See, e.g.*, *id.* (holding that "claims that fully disclosed fee arrangements are unreasonable lie against the employer, not the service provider"); *John Hancock Life Ins.*, 768 F.3d at 293 (same).

Similarly, neither Defendant was acting as a Plan fiduciary when it paid and/or accepted Plan assets as payment for services rendered under the Nestle-VRA Agreement because neither Defendant exercised any discretion or control over the amount of VRA's fees, which was set by a pre-determined formula over whose inputs neither Voya Institutional nor VRA had any control. *See F.H. Krear*, 810 F.2d at 1259 (holding that a person may become a fiduciary with respect to their compensation if "the agreement . . . give[s] [that person] such control over factors that

7

determine the actual amount of [that person's] compensation"); *see also Transamerica Life Ins.*, 2018 WL 1022460, at *6 (holding that "with respect to withdrawing its formula-driven fee from the pooled accounts," a service provider's actions were "purely ministerial" and "do not give rise to fiduciary liability under ERISA"); *McLemore v. Regions Bank*, 682 F.3d 414, (6th Cir. 2012) (same).

Plaintiff's arguments that Voya Institutional and VRA were acting as fiduciaries with respect to VRA's fees are unpersuasive. First, Plaintiff argues that under the terms of the Nestle-VRA Agreement, VRA was an express fiduciary, i.e., that the Nestle-VRA Agreement expressly required VRA to act in compliance with ERISA, as if it were a fiduciary. Under the Nestle-VRA Agreement, however, VRA is designated as a fiduciary only "with respect to the services provided" in its capacity as an investment manager for the Plan. This language cannot reasonably be construed as conferring on VRA fiduciary status with respect to its own fees.

Second, the proposed FAC alleges that Voya Institutional and VRA exercised discretion or control over the amount of VRA's fees based on a provision in VRA's agreement with Financial Engines that states VRA "will be responsible for the payment of any compensation due to Financial Engines." Based on this provision, Plaintiff argues that "VRA's fiduciary responsibility included determining how much to not pay to Financial Engines and keep for itself." Neither this provision nor any provision in the Nestle-VRA Agreement supports Plaintiff's argument that Voya Institutional or VRA exercised discretion or control over the amount of VRA's fees under the Nestle-VRA Agreement, or undermines the conclusion that Nestle was the ultimate decision-maker with respect to VRA's fees. Nor does the FAC allege that Voya Institutional or VRA paid themselves more than the amount to which they were entitled under the Nestle-VRA Agreement. *See United Teamster Fund*, 39 F. Supp. 3d at 470

8

("[R]etaining payments in excess of costs does not create a fiduciary duty where the contract expressly authorizes the withholding, or where the contract simply does not require a contractor 'to pass along all of the savings." (internal citations omitted)); *see also Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28–29 (2d Cir. 2002) (holding that a service provider that adheres to the agreed-upon terms of an employee retirement plan is not bound to deviate from those terms against its own interests simply because doing so could result in gains to plan participants); *Chendes v. Xerox HR Sols.*, No. 16 Civ. 13980, 2017 WL 4698970, at *4 (E.D. Mich. Oct. 19, 2017) (rejecting argument that defendant was a fiduciary with respect to its compensation where plaintiffs "refer[ed] not to [d]efendant's discretion in retaining funds from [p]laintiffs, but rather to [d]efendant's 'discretion over the compensation it received *from F[inancial]E[ngines]*'" (emphasis in original)).

Third, Plaintiff argues that Voya Institutional and VRA were fiduciaries with respect to the Plan and VRA's fees because each played a role in the appointment of a fiduciary, which is itself a fiduciary act. Specifically, Voya Institutional and VRA allegedly engaged Financial Engines, and Voya Institutional allegedly played a role in the appointment of VRA. As explained above, Voya Institutional and VRA did not owe a duty to the Plan during the negotiation of the Administrative Services Agreement or the Nestle-VRA Agreement and therefore they cannot be held liable for any role they played in the appointment of Financial Engines and/or VRA under those Agreements. Even if Voya Institutional and VRA were fiduciaries by virtue of their appointment of another fiduciary, the challenged conduct -- their payment and/or receipt of excessive fees -- is not sufficiently related to give rise to fiduciary liability. *See Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) ("[W]e must ask whether the entity is a fiduciary with respect to the particular activity in question"); *Pegram*, 530 U.S. at

9

226 ("[T]he threshold question is . . . whether [the] person was acting as a fiduciary . . . when taking the action subject to complaint."); *see also Howell v. Motorola, Inc.*, 633 F.3d 552, 562 (7th Cir. 2011) (noting that an entity's involvement in the appointment of a fiduciary can give rise to fiduciary duties, including "a duty to choose appointees wisely and to monitor their activities").

Lastly, even if, as the FAC alleges, Voya Institutional and VRA leveraged the difficulty and expense of switching Plan recordkeepers to influence Nestle's decision to engage VRA and Financial Engines, the FAC does not allege any facts to support the inference that the decision to engage VRA and Financial Engines was not ultimately Nestle's to make. *Chendes*, 2017 WL 4698970, at *5 (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009)) ("There is an important difference between an assertion that a firm exercised 'final authority' over the choice of funds, on the one hand, and an assertion that a firm simply 'played a role' in the process, on the other hand."); *Fleming v. Fidelity Mgmt. Tr. Co.*, No. 16 Civ. 10918, 2017 WL 4225624, at *7 (D. Mass. Sept. 22, 2017) (rejecting argument that defendant was a fiduciary by virtue of its appointing Financial Engines where the Master Trust Agreement between the plan sponsor and defendant "compel[led] the conclusion" that the plan sponsor appointed Financial Engines). As the FAC fails to allege that either Voya Institutional or VRA was a fiduciary with respect to the challenged conduct, Counts II, IV, V and VI fail as a matter of law.

**B. Alleged Breach of Fiduciary Duty Against VRA for Marketing Financial Engines' Services -- Count III**

Count III alleges that VRA engaged in a prohibited transaction under ERISA § 406(b)(2) based on VRA's "conduct in marketing Financial Engines' services" to the Plans for a fee. This claim also would be futile because the FAC does not plead sufficiently that VRA was a fiduciary with respect to the challenged action.

### 1. Applicable Law

"Section 406 of ERISA supplements the general fiduciary obligations set forth in § 404 by prohibiting certain categories of transactions believed to pose a high risk of fiduciary self-dealing." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006). VRA's liability in Count III is based on § 406(b)(2), which in relevant part prohibits a plan fiduciary from "act[ing] in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries . . . ." The Second Circuit has construed § 406(b)(2) "narrowly, holding that a transaction between the plan and a party having an adverse interest is required." *Leber v. Citigroup*, No. 07 Civ. 9329, 2010 WL 935442, at *12 (S.D.N.Y Mar. 16, 2010) (internal quotation marks omitted; citing *Donovan v. Bierwirth*, 680 F.2d 263, 270 (2d Cir. 1982) (holding that § 406(b)(2) "[did] not apply" to a plan fiduciary's decision to invest in the stock of the plan's sponsor company because the sponsor company did not have "adverse" interests for purposes of ERISA). The FAC asserts that VRA's conduct violated this provision because VRA marketed Financial Engines' fee-based services to the Plans for which Voya Institutional was recordkeeper, and therefore, VRA marketed the services of an entity whose interests were "adverse" to the Plan's.

### 2. Application

The FAC fails plausibly to allege that VRA engaged in a prohibited transaction under § 406(b)(2) for multiple reasons. First, the FAC fails to allege that VRA was acting as a fiduciary while engaged in the challenged conduct -- marketing Financial Engines' services to plans for which Voya Institutional served as recordkeeper. As explained above, fiduciary liability attaches to the extent that a person exercises discretion in relation to a plan. 29 U.S.C. § 1002(21)(A); *see also Coulter*, 753 F.3d at 366. Additionally, a court must determine whether

the person was a fiduciary with respect to the specific activity in question. *See Renfro*, 671 F.3d at 321; *Pegram*, 530 U.S. at 225. Here, the FAC does not allege sufficient facts to support an inference that VRA had discretion with respect to the decision of the plan sponsor to engage Financial Engines. As the FAC does not plausibly allege that the decision to engage Financial Engines was VRA's (as opposed to Nestle's), the FAC does not allege adequately that VRA exercised discretion in relation to a plan. Nor does Plaintiff cite any law to support the assertion that marketing a provider's services itself gives rise to fiduciary duties. *See Black v. Bresee's Oneonta Dep't Store, Inc. Sec. Plan*, 919 F. Supp. 597, 606 (N.D.N.Y. 1996) (stating that "the mere marketing of the . . . plan does not implicate fiduciary conduct") (internal quotation marks omitted and ellipses in original); *Olivet Boys' & Girls' Club of Reading v. Wachovia Bank, N.A.*, No. 08 Civ. 4702, 2009 WL 1911049, at *1 (E.D. Pa. July 1, 2009) (holding that "Wachovia cannot be a fiduciary under ERISA because it did not render investment advice" and noting that "[p]laintiffs describe[d] Wachovia's actions with respect to the new fund as marketing").

Second, the FAC fails to plead sufficient facts that Financial Engines' interests were "adverse" to those of the Plan. Merely providing its services to the Plan for a fee is insufficient to render Financial Engines an adverse party. *See Leber*, 2010 WL 935442, at *13 ("With respect to plaintiffs' mutual fund claims, the complaint can be read to allege at most that Citigroup sold investment securities to the Plan at prevailing market rates, conduct *Donovan* instructs is insufficient to render the Plan's interests 'adverse' to those of the sponsor company."). The FAC's unsupported allegation that Financial Engines sought to obtain a prohibited kickback for VRA likewise is insufficient. Accordingly, Count III fails as a matter of law.

### C. Alleged Knowing Participation in Nestle's Breach of Fiduciary Duty Against All Defendants -- Count I

Count I alleges that Voya Financial, Voya Institutional and VRA knowingly participated in Nestle's violation of ERISA § 406(a). This claim fails because the FAC fails to allege sufficient facts that Nestle engaged in a prohibited transaction by paying allegedly excessive fees to VRA.

#### 1. Applicable Law

Generally, § 406(a) concerns "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). Defendants' liability in Count I is premised on an allegation that Nestle engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(C) and (D), which provide:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he *knows or should know* that such transaction constitutes a direct or indirect . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . ."

(Emphasis added). ERISA defines a "party in interest" to include any "person providing services" to a plan. *See* 29 U.S.C. § 1022(14)(B).

#### 2. Application

Count I against all Defendants is predicated on Nestle's allegedly engaging in a prohibited transaction under § 406(a)(1). Specifically, the FAC alleges that Nestle engaged in a prohibited transaction because VRA was a "party in interest" within the meaning of ERISA, and Nestle caused the Plan to pay VRA's excessive fees. This claim would be futile as a matter of law.

The proposed FAC alleges that Nestle had knowledge of VRA's allegedly excessive fees because it was apparent on the face of the Nestle-VRA Agreement that VRA was to be compensated for investment advisory services that only Financial Engines was to offer. Therefore, according to the FAC, any payments of fees to VRA were excessive because VRA provided no compensable services under the Nestle-VRA Agreement.

Plaintiff's contention that Nestle engaged in a prohibited transaction by paying a party in interest -- VRA -- for services rendered to the Plan is unpersuasive. "[I]t is circular to suggest that an entity which becomes a party in interest by providing services to the Plan[] has engaged in a prohibited transaction simply because the Plan[] ha[s] paid for those services." *Sacerdote v. N.Y.U.*, No. 16 Civ. 6284, 2017 WL 3701482, at *13 (S.D.N.Y. Aug. 25, 2017). And the FAC's allegation that Voya Institutional purposefully interposed VRA between Voya Institutional and Financial Engines to justify higher fees is entirely speculative and not supported by facts alleged in the FAC. *See Cunningham v. Cornell Univ.*, No. 16 Civ. 6525, 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017) ("[A]bsent some evidence of self-dealing or other disloyal conduct, allegations that the Plans violated § 406(a) by paying Fidelity and TIAA-CREF for recordkeeping services -- even allegations that the Plans paid too much for those services -- do not, without more, state a claim.").

The FAC also fails to cure the deficiency identified in the original Complaint -- that it failed to plead Nestle's knowledge -- because the FAC pleads in a conclusory manner that Nestle had actual or constructive knowledge that VRA's fees were excessive. Drawing all reasonable inferences in Plaintiff's favor, the FAC alleges that Nestle knew VRA's fees were excessive because Nestle could have obtained the same level of services that VRA nominally provided, either directly from Financial Engines, or in the market. This allegation is entirely conclusory.

The FAC fails to plead any facts to suggest that VRA's fees exceeded the prevailing market rate for the services Financial Engines' actually provided, or that a prudent fiduciary would have known that it could obtain same level of services for the price that VRA negotiated with Financial Engines. A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 557).

Nor does Plaintiff cite any case holding that VRA's advisor-sub-advisor relationship with Financial Engines was per se improper, such that Nestle should have recognized it as unreasonable. To endorse Plaintiff's position in effect would prohibit service providers from engaging third parties to manage their costs, or at a minimum, require plan sponsors to monitor not only their own agreements with service providers but also their service providers' agreements with third parties. Plaintiff has not presented any law to suggest that ERISA imposes such a heavy burden on plan sponsors. Because the FAC fails to allege adequately any underlying breach by Nestle, Count I based on Defendants' knowing participation in Nestle's alleged breach fails as a matter of law.

**D. Prohibited Kickback Claim Against Voya Institutional -- Count VII**

Count VII alleges that that Voya Institutional received a prohibited "kickback" in violation of ERISA § 406(b)(3) because it received dividend payments from VRA, its subsidiary, in connection with Financial Engines' services. This claim would be futile because the FAC does not allege that Voya Institutional was a fiduciary with respect to the challenged conduct.

1. **Applicable Law**

Under ERISA § 406(b)(3), a plan fiduciary "shall not . . . receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving assets of the plan." 29 U.S.C. § 1106(b)(3). Section 406(b)(3) "applies only to transactions between a plan and a fiduciary . . . and explicitly contemplates and bars fiduciaries from receiving 'any consideration for [their] own personal account *from any party* dealing with such a plan in connection with a transaction involving assets of the plan." *Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (alterations and emphasis in original). Therefore, § 406(b)(3) "prohibits payment to a plan fiduciary of kickbacks or other consideration by persons having an interest in a transaction involving plan assets." *Id*. "Fee-sharing arrangements between service providers and third party managers do not in-and-of-themselves create a violation of ERISA." *Rosen v. Prudential Ret. Ins. & Annuity Co.*, --- F. App'x ----, 2017 WL 4534782, at *3 (2d Cir. 2017) (summary order) (internal quotation marks omitted).

2. **Application**

Count VII is premised on Voya Institutional's receipt of dividend payments from VRA -- not the Plan. Accordingly, even if Voya Institutional were a fiduciary with respect to the Plan, Count VII fails as a matter of law because the FAC does not allege that the transfer of payments from VRA to Voya Institutional involved "assets of the plan." *See Chendes*, 2017 WL 4698970, at *9 (relying on *Hecker*, 556 F.3d at 584, for the proposition that plan assets once "lawfully paid as fees to a service provider" cease to be plan assets and rejecting plaintiffs' § 406(b)(3) claim because "payments from F[inancial] E[ngines] to Defendant do not constitute 'plan assets'").

16

E. **Knowing Participation in Conduct in Violation of ERISA Against Voya Financial and Voya Institutional -- Counts VIII and IX**

Counts VIII and IX seek equitable relief under ERISA § 502(a)(3) from Voya Financial and Voya Institutional based on their allegedly benefiting from VRA's "ill-gotten" fees. Section 502(a)(3) allows a "participant, beneficiary, or fiduciary" to obtain an injunction or "other appropriate equitable relief" to redress an act that violates ERISA. 29 U.S.C. § 1332(a)(3); *see also Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000). The Supreme Court has explained that the equitable relief permitted under this section is not equitable relief "at large," but only that which will enforce the terms of a plan or ERISA itself. *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013).

Here, the FAC's claims for equitable relief under § 502(a)(3) are derivative of its breach of fiduciary duty and prohibited transaction claims. Because the FAC fails to allege that any ERISA fiduciary violated ERISA, the FAC's claims for equitable relief necessarily fail. *See Fleming*, 2017 WL 4225624, at *9 (dismissing claim for equitable relief where the complaint's underlying prohibited transaction claims failed).

IV. **CONCLUSION**

Plaintiff's motion for leave to file the FAC is **DENIED** as futile because none of the claims could survive a motion to dismiss. The Clerk of Court is directed to close the motion at Docket No. 73 and close the case.

Dated: March 13, 2018
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**